IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KATIE LINDSEY,

                      Plaintiff,

           v.                              Case No. 08 C 3547

WALGREEN CO.,                              Hon. Harry D. Leinenweber

                      Defendant.

## MEMORANDUM OPINION AND ORDER

Before the court is the Motion of Defendant Walgreen Co. (hereinafter, "Walgreens") for Summary Judgment on Plaintiff Katie Lindsey's (hereinafter, the "Plaintiff") employment discrimination claim pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the motion is granted.

## I. BACKGROUND

Plaintiff, a licensed pharmacist, was hired by Walgreens in May 1995 and worked for the company until her termination on August 30, 2007. She was 53 years old when she was fired. Plaintiff subsequently brought suit under the Age Discrimination in Employment Act (the "ADEA"), alleging that Defendant wrongfully terminated her based on her age.

Plaintiff first worked for Walgreens as an hourly pharmacist at various Walgreens locations on the south side of Chicago. In March 2002, Connie Jenkins ("Jenkins"), pharmacy supervisor for

Walgreens' Chicago West District, promoted Plaintiff to pharmacy manager at the Walgreens located on South Halsted Street in Chicago. Upon that promotion Jenkins became Plaintiff's direct supervisor.

Jenkins rated Plaintiff "meets expectations" once or twice in her evaluation of Plaintiff's performance as pharmacy manager but in March 2006 rated Plaintiff "needs improvement." In early 2007, Jenkins received complaints from various employees in the Halsted store that Plaintiff was violating pharmacy policies and procedures. This led to an investigation in which Jenkins concluded that Plaintiff had filled expired prescriptions and modified the price of certain drugs in violation of Walgreens policies. Jenkins demoted Plaintiff to staff pharmacist, transferred her to a Walgreens location on South Western Avenue in Chicago, and gave her a final warning that another failure to follow company policy would result in termination. The pharmacy manager at the Western Avenue location was Akua Bamfo-Agyei ("Bamfo-Agyei"). Plaintiff does not allege that Jenkins's decision to demote her was based on her age.

Plaintiff and Bamfo-Agyei apparently had a contentious relationship. Plaintiff alleges that Bamfo-Agyei called her old and slow, and made derogatory references to her demotion. Plaintiff also claims that her co-workers at Western Avenue made similar comments, referring to Plaintiff as "old, crazy and slow."

Plaintiff contends that she informed Jenkins of these comments by her co-workers but Jenkins never took disciplinary action and instead told Plaintiff she was "old enough to know better" and "too old" to take such remarks seriously.  Plaintiff also claims that certain occasions when Plaintiff was behind in her work Jenkins questioned whether Plaintiff could "keep up," was "past her prime," or "too old to do this anymore."  Walgreens denies that Jenkins ever made such comments.

The events leading to Plaintiff's dismissal concern her alleged violation of Walgreens' Drug Utilization Review (the "DUR") guidelines.  Those guidelines require that, before a prescription can be filled, the pharmacist must perform a computer-assisted review of the patient's drug therapy, including the patient's drug history and the possibility of drug interactions, and use his or her professional judgment to resolve any issues that arise.  That may include contacting the doctor or the patient when appropriate, although the DUR policy does not require the pharmacist to contact the patient's doctor in every circumstance.  If a pharmacist ultimately proceeds with filling the prescription, he or she must override the drug-interaction warning and enter an explanatory notation in the database.

On Aug. 22, 2007, about four months after Plaintiff received her final warning, Bamfo-Agyei began processing a prescription for fluconazole, an antifungal drug used to treat yeast infections.  A

warning came up in the Walgreens database indicating that the drug could have a severe adverse reaction with another drug the patient was taking, the cholesterol drug simvastatin. The customer's history revealed that she also was taking anti-rejection medication for a recent kidney transplant. The monograph described the severity of the potential drug interaction as "major."

After reviewing this information, Bamfo-Agyei called the patient's doctor to discuss the potential drug interaction and the doctor's nurse told Bamfo-Agyei the doctor would call back. Bamfo-Agyei claims that she put the prescription in an "exception queue" in the database and entered a notation indicating that she was waiting for a return phone call from the doctor to dispense the drug. When Plaintiff arrived that day, Bamfo-Agyei claims that she notified Plaintiff of the prescription in the exception queue and that the patient's doctor would be calling the pharmacy with further instructions. Plaintiff denies that Bamfo-Agyei told her anything about this prescription.

Shortly after starting her shift Plaintiff filled the prescription, entered a notation in the database that read "reviewed patient history," and overrode the drug interaction warning. Plaintiff does not recall whether this prescription was in the "exception queue" when she filled it and she denies ever seeing a notation in the system from Bamfo-Agyei indicating that she had contacted the patient's doctor and was waiting for approval

to dispense the prescription.  There is no written evidence that Bamfo-Agyei left such a notation nor would there be; when Plaintiff entered her own notation, it would have overridden any prior notation in the system.  Plaintiff contends that risk of a drug interaction was minimal and that she appropriately exercised her professional judgment in dispensing the prescription. Nonetheless, Plaintiff acknowledged in her deposition testimony that if the patient's doctor had instructed the pharmacy to give the patient an over-the-counter medication instead, she would not have filled the prescription.

Bamfo-Agyei testified that she received a call from the patient's doctor the next day instructing the pharmacy not to fill the prescription but when she pulled up the prescription in the database she saw that Plaintiff had already filled it.  Bamfo-Agyei then called the customer and advised her not to take the drug, and reported the incident to Jenkins.

Jenkins investigated the incident by interviewing Bamfo-Agyei and reviewing all of the information in the Walgreens database, including the customer's drug history and the monograph detailing the possible drug interaction of simvastatin and fluconazole. Jenkins did not interview Plaintiff.  She determined that Plaintiff should not have filled the prescription without consulting with the patient's doctor.  This was based on the possibility of a severe adverse reaction, the patient's medical history, and the

availability of over-the-counter medications for yeast infections. It was also based in part on Bamfo-Agyei's decision to call the doctor and the doctor's ultimate determination that he did not want the prescription filled. As a result of her investigation, Jenkins concluded that termination was warranted since Plaintiff failed to follow pharmacy policy by not deferring to the warning of a potentially severe drug reaction and by recklessly filling the prescription without waiting to hear back from the patient's doctor. Jenkins terminated Plaintiff on August 30, 2007.

Walgreens replaced Plaintiff with Cornetta Levi ("Levi"), a pharmacy extern who was already working at the Western Avenue location. Jenkins testified in her deposition that Levi appeared "slightly younger" than Plaintiff did, and that Levi was in pharmacy school at the time of Plaintiff's firing. Plaintiff contends in her response brief that Levi appeared to be in her mid-twenties but there is no evidence in the record as to Levi's exact age.

## II.  DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c). This means that if, after adequate time for discovery,

the non-moving party cannot establish the existence of an element essential to that party's case, and on which the party bears the burden of proof, summary judgment should be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In addressing a motion for summary judgment, the court must review the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Vanasco v. National-Louis University*, 137 F.3d 962, 964 (7th Cir., 1998). However, a genuine issue of fact is not shown by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## B. Plaintiff's Age Discrimination Claim

The ADEA prohibits an employer from firing an employee who is age 40 or older because of his or her age. 29 U.S.C. § 623(a)(1), 29 U.S.C. §631(a). A complainant may choose to proceed under either the direct or indirect method of proof and the distinction between the two is vague. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir., 2007). "Direct" proof of discrimination includes admissions or near-admissions by the employer that its decisions were based on a proscribed criterion (*e.g.*, "You're too old to work here."), as well as circumstantial evidence which

suggests discrimination through a longer chain of inferences. *Id.* The "indirect" method of proof involves a subset of circumstantial evidence that conforms to the burden-shifting formula of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 490-91. The ultimate question under either method of proof is whether, but for her age, Plaintiff would have been fired. *Martino v. MCI Communications Services, Inc.,* 574 F.3d 447, 455 (7th Cir., 2009) (citing *Gross v. FBL Financial Services, Inc.*, --- U.S. ---, 129 S.Ct. 2343 (2009)). In this case, Plaintiff proceeds under both the direct and indirect methods of proof and the court will examine each in turn.

### 1. Direct Method

Under the direct method, a plaintiff may survive summary judgment by presenting evidence indicating, either directly or by inference, that her employer's decision to terminate her was based on her age. *Martino*, 574 F.3d at 452; *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir., 2009). This can come in the form of an admission by the decision-maker that he or she harbored discriminatory animus, but more typically comes from circumstantial evidence. *Nagle*, 554 F.3d at 1114. Such circumstantial evidence may include: (1) suspicious timing, ambiguous oral or written statements, or behavior or comments directed at other employees in the protected group; (2) evidence that similarly situated employees outside the protected class systematically received better

treatment, and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination. *Id.* at 1114-15. To survive summary judgment, plaintiff's circumstantial evidence must create a "substantially strong" inference that the employer acted based on prohibited animus. *Id.* at 1118.

In this case, Plaintiff presents no evidence that Jenkins, the decisionmaker, admitted to harboring any discriminatory bias on the basis of age so the court must determine whether there is sufficient circumstantial evidence of discriminatory bias in the record to demonstrate a genuine issue of material fact. Plaintiff points to ageist comments allegedly made by Jenkins, Bamfo-Agyei, and other co-workers at the Western Avenue location as evidence that her termination was due to her age. Isolated remarks that are no more than 'stray remarks' in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." *Hemsworth*, 476 F.3d at 491. However, a remark may support an inference of discriminatory animus where the remark was (1) made by the decisionmaker, (2) around the time of the decision, and (3) in reference to the adverse employment action. *Id.* The ageist remarks offered by Plaintiff fail to meet this test.

**Co-workers' remarks.** Plaintiff's co-workers at the Western Avenue location did not make the decision to fire her. Thus, their remarks, even if ageist and offensive, cannot provide an evidentiary basis for Plaintiff's ADEA claim under the direct method of proof.

**Jenkins' remarks.** Jenkins was the decisionmaker but her remarks still fail to support an inference that her decision to fire Plaintiff stemmed from discriminatory animus. Plaintiff points to two separate remarks by Jenkins as evidence of discriminatory animus: that Plaintiff was "old enough to know better" when Plaintiff complained about her co-workers to Jenkins and that Plaintiff was "too old" to take her co-workers' remarks seriously. As an initial matter, Jenkins' statements are not necessarily discriminatory and speak more to Plaintiff's maturity than to any age bias on the part of Jenkins. *See Martino*, 574 F.3d at 452 (noting that "oldtimer" reference is not particularly egregious and is often a term of endearment between friends). Likewise, Jenkins' questions whether Plaintiff could "keep up" or was "past her prime" are similar to comments about a worker's energy level that the Seventh Circuit has held do not raise an inference of discriminatory animus. *See, Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1113 (7th Cir, 1998).

More importantly, Plaintiff offers no evidence that any of Jenkins' statements were made at the time of her termination or

related in any way to her termination. In *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106 (7th Cir., 1998), plaintiff was fired months after his supervisor remarked that she wanted to replace plaintiff with a woman and then transferred plaintiff to another position and did replace him with a woman. The Seventh Circuit affirmed summary judgment for defendant in part because plaintiff failed to present evidence linking the supervisor's gender-related comment to plaintiff's subsequent termination. *Fortier*, 161 F.3d at 1112; *see also, Olson v. Northern FS, Inc.*, 387 F.3d 632, 635 (7th Cir., 2004) (finding no direct evidence of discriminatory intent where a supervisor told a salesman his age made him "undesirable in the business world" five months prior to his firing). Likewise, here, Plaintiff has drawn no connection whatsoever between Jenkins' stray age-related comments and Plaintiff's termination. Jenkins terminated Plaintiff for violating pharmacy policy, not for working at a slow pace. As a result, Jenkins' comments do not support an inference that her decision to fire Plaintiff was based on discriminatory animus.

**Bamfo-Agyei's remarks**. Plaintiff also relies on derogatory, age-related remarks made by Bamfo-Agyei, the pharmacy manager at the Western Avenue location. Typically, Bamfo-Agyei's alleged remarks would not support an inference of discrimination since Bamfo-Agyei did not make the decision to terminate Plaintiff. *See Hemsworth*, 476 F.3d at 491. However, under the so-called "cat's

paw" theory, Bamfo-Agyei's comments could be imputed to Jenkins if Bamfo-Agyei exercised "singular influence" over Jenkins in the decision to fire Plaintiff. *Staub v. Proctor Hosp.*, 560 F.3d 647, 656 (7th Cir., 2009). This influence could be exercised by supplying misinformation or failing to provide relevant information to the person making the employment decision. *Id.*

Plaintiff appears that argue that the "cat's paw" theory applies here because Jenkins relied on Bamfo-Agyei's account of the prescription-filling incident that led to Plaintiff's firing. Plaintiff alleges that Jenkins' investigation of the incident was inadequate, noting that she did not interview Plaintiff before firing her. However, Jenkins' undisputed testimony is that she reviewed all of the information in the Walgreens' database and determined that Plaintiff should not have filled the fluconazole prescription without first consulting with the patient's doctor.

A decisionmaker is not required "to be a paragon of independence." *Staub*, 560 F.3d at 659. "It is enough that the decision-maker is not wholly dependent on a single source of information and conducts her own investigation into the facts relevant to the decision." *Id.* (internal quotation omitted). To require more, the *Staub* court said, would ignore the reality that decisionmakers who are removed from the situation at hand usually have to rely to some extent on other's opinions. *Id.*

In this case, Jenkins independently determined that Plaintiff violated pharmacy policy when she disregarded Bamfo-Agyei's instructions and filled the fluconazole prescription. Plaintiff argues that conclusion was incorrect. However, the 7th Circuit has said that whether the court agrees with the decisionmaker's conclusion is irrelevant under the cat's paw theory; the only issue is whether the decisionmaker blindly relied on information from a biased source. *See id.* Plaintiff cannot show that was the case here.

### 2. *Indirect Method*

The indirect method of proof, derived from *McDonnell Douglas Corp. v. Green*, enables Plaintiff to avoid summary judgment by establishing a *prima facie* case of age discrimination. *Martino*, 574 F.3d at 453. In a case where the plaintiff is alleging termination based on age discrimination, the *prima facie* case requires the plaintiff to establish: (1) she is older than 40; (2) her performance met her employer's legitimate expectations; (3) despite her performance she was subjected to an adverse employment action; and (4) the position remained open or she was replaced by someone substantially younger. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 472 (7th Cir., 2002). Assuming Plaintiff establishes a *prima facie* case under this method, the burden then shifts to Walgreens to provide a legitimate, non-discriminatory reason for her firing. *Id.* If the company does so, Plaintiff must present

- 13 -

evidence sufficient to convince a rational jury that the proffered reason was pretextual. *Id.* at 472-73.

Although the Supreme Court in *Gross v. FBL Financial*, 129 S.Ct. at 2349 n.2, commented that it had not yet decided whether the *McDonnell Douglas* burden-shifting test applies in ADEA cases, the Seventh Circuit continues to apply the test so this Court is bound by it. *See Guinto v. Exelon Generation Co.*, No. 08-2191, 2009 WL 2502099, at *4 n.2 (7th Cir., Aug. 18, 2009).

Only two of the four *McDonnell Douglas* factors are at issue in this case: whether Plaintiff was meeting Walgreens' legitimate expectations, and whether someone substantially younger replaced her. Also at issue are whether Walgreens can offer a legitimate, non-discriminatory reason for Plaintiff's firing, and whether Plaintiff has evidence tending to show that reason is a pretext for discrimination.

### a. Employer's Legitimate Expectations

In order to avoid summary judgment under the indirect method of proof, Plaintiff must show that she was meeting Walgreens' legitimate expectations at the time of her firing. The Seventh Circuit has held that "the proper inquiry mandates looking at [the employee's] job performance through the eyes of her supervisors at the time of her . . . termination." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir., 2008).

Plaintiff contends that she did not violate company policies or procedures by filling the fluconazole prescription. She also takes issue with Jenkins' assessment of her performance, particularly the March 2006 evaluation that rated her as "needs improvement." However, Plaintiff's disagreement with Jenkins' assessment of her is not enough to show that she was meeting Walgreens' legitimate expectations. *See Fortier*, 161 F.3d at 1114 (holding that employee's own appraisal of his or her job performance is not sufficient to create an issue of fact as to the honesty of the employer's assessment); *see also Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 540 (7th Cir., 2007) (rejecting plaintiff's argument that she was meeting her employer's expectations because she completed her assignments, despite her confrontational attitude).

The Seventh Circuit has held that it does not sit as a "super-personnel" committee to review the wisdom or judgment of employers. *Gates*, 513 F.3d at 689. Although Plaintiff characterizes her decision to fill the fluconazole prescription as an appropriate exercise of professional judgment, it was for Walgreens to decide whether she exercised that judgment properly.

Jenkins concluded that Plaintiff erred by filling the prescription without consulting the patient's doctor, given what she deemed to be the severity of the drug interaction and the availability of over-the-counter substitutes for fluconazole.

Given that Plaintiff had been demoted four months earlier for violating pharmacy policies and been given a "final warning," Jenkins considered this an offense warranting termination. It is irrelevant whether Jenkins was right or wrong, as long as she honestly believed the stated reasons for Plaintiff's dismissal. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir., 2006) (holding that even if employer overreacted by firing employee "it is not our role to determine the competency of or interfere in employment simply where we believe an employer has made a poor choice"). Thus, Plaintiff has failed to establish that she was meeting her employer's legitimate expectations at the time of her termination.

*b. Replacement By A Substantially Younger Employee*

In order to establish a prima facie case of age discrimination under the indirect method of proof Plaintiff must also show that she was replaced by a substantially younger employee. The U.S. Supreme Court has held that this is a "reliable indicator of age discrimination." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). The Seventh Circuit has generally defined "substantially younger" as 10 years younger. *Duncan v. Fleetwood Motor Homes of Indiana*, *Inc.*, 518 F.3d 486, 493 (7th Cir., 2008). It is Plaintiff's burden to establish that the employee who replaced her was substantially younger. *See Nagle*, 554 F.3d at 1118.

Plaintiff was replaced by Cornetta Levi, who had been working as a pharmacy intern at the Western Avenue location. Levi's age is not in the record. Plaintiff contends in her response brief that Levi appeared to be in her mid-20s, but does not cite anything in the record to support this proposition. At this stage of the case, mere speculation as to Levi's age is insufficient to resist summary judgment. *See Kowalczyk v. Walgreen Co.*, No. 03-8335, 2005 WL 1176599, at *8-9 (N.D.Ill., May 17, 2005) (finding it inappropriate for plaintiff to rely on "guesswork" deposition testimony to establish the age of the worker who replaced her). Given her failure to establish Levi's age, Plaintiff cannot establish that Levi was substantially younger than her.

### c. Pretext

As described above, Plaintiff is unable to make out a *prima facie* case under the indirect method. Even if she had, Plaintiff would still have to show that Walgreens' proffered reason for her firing, the filling of the fluconazole prescription, is mere pretext and that Walgreens really fired her because of her age. *See Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 348 (7th Cir., 1997). "Pretext . . . means a lie, specifically a phony reason for some action." *Id.* (quoting *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir., 1995). In order to show pretext, Plaintiff must "squarely rebut" the articulated reason for her firing. *Plair*, 105 F.3d at 349; *Traylor v. Brown,* 295 F.3d 783, 791 (7th Cir., 2002)

(a plaintiff cannot avoid summary judgment merely by offering conjecture that a jury could possibly disbelieve the employer's stated reason for the dismissal). Plaintiff fails to do this.

Plaintiff argues that the age-related hostility she endured from her co-workers, and the fact that Walgreens tolerated it despite Plaintiff's complaints, demonstrates an overall hostility toward older employees within Walgreens which should weigh in favor of a finding of pretext. She also challenges the thoroughness of Jenkins' investigation into Plaintiff's filling of the fluconazole prescription prior to her firing. She further contends that she did not violate Walgreens' policy because the policy did not mandate that a pharmacist contact the patient's doctor in the case of a potential drug interaction. According to Plaintiff, all of these points indicate that the proffered reason for her termination is pretext. Plaintiff's arguments fail to squarely rebut the legitimate, nondiscriminatory reason Walgreens has given for her termination.

First, as to the discriminatory remarks made by Plaintiff's co-workers, the 7th Circuit has held that such remarks, even when insufficient as direct evidence of discrimination, should still be taken into account under the *McDonnell Douglas* framework. *Olson*, 387 F.3d at 635-36. As discussed above, most of the stray discriminatory remarks at issue here were not made by the decision-maker, and the stray remarks allegedly made by Jenkins were not

related to her decision to terminate Plaintiff and are insufficient to show discriminatory animus.

Second, even if Jenkins' investigation of Plaintiff were inadequate, the Seventh Circuit has held that is not enough to establish pretext. In *Kariotis v. Navistar International Transp. Corp.*, 131 F.3d 672, 677 (7th Cir., 1997), for example, the 7th Circuit described an investigation into an employee's allegedly fraudulent use of disability leave as "hardly . . . world-class." Yet the court rejected the plaintiff's theory that the investigation was so shoddy that "it reeks of discriminatory intent." *Id.* at 678. In order to establish that, the court held, the plaintiff would have to show that the company would have been more careful before firing a younger employee. *Id.* at 677. Just as in *Kariotis*, Plaintiff here does not present any evidence that younger employees accused of errors in judgment in filling prescriptions were treated more leniently.

Finally, although Plaintiff argues that Walgreens exaggerated the potential drug interaction posed by filling the fluconazole prescription, she does not put forth any evidence that would show the evidence of a possible interaction was so doubtful that a jury could conclude that Jenkins could not have believed the customer was at risk. *See Little v. Illinois Dept. of Revenue*, 369 F.3d 1007, 1013 (7th Cir., 2004) (noting that a showing that a report's conclusions completely lacked credibility would be relevant to a

finding of pretext).  Accordingly, Plaintiff fails to show that Walgreens' proffered reason for her termination is pretextual and, as a result, her age discrimination claim fails to survive summary judgment under the indirect method of proof.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, Defendants' motion for summary judgment is granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** December 8, 2009